Filed 9/24/25  P. v. Chavez CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANGEL RAFAEL CHAVEZ,<br><br>    Defendant and Appellant. | F088276<br><br>(Super. Ct. Nos. VCF395130, VCF409552)<br><br>**OPINION** |

-ooOoo-

## THE COURT*

APPEAL from a judgment of the Superior Court of Tulare County.  Nathan G. Leedy, Judge.

Keith Fox, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Darren K. Indermill and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*　　　Before Detjen, Acting P. J., DeSantos, J. and Ellison, J.†

†　　　Retired judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Appellant Angel Rafael Chavez appeals from the judgment of conviction following a no contest plea in two Tulare County Superior Court cases. Appellant was sentenced to a total prison term of five years, eight months made up in part of the middle term of imprisonment for the principal term. He did not obtain a certificate of probable cause.

On appeal, appellant, who was 22 and 23 years of age when he committed the offenses, argues the trial court was not aware of its duty under Penal Code[1] section 1170, subdivision (b)(6)(B) to apply a presumption that the lower term applies when it finds the defendant's youthfulness is a contributing factor to the offense. Appellant also argues the court erred by imposing concurrent sentences rather than staying punishment pursuant to section 654 on three counts because they arose from a single possession of a firearm.

We modify the judgment to reflect that punishment on counts 4, 5, and 6 is stayed pursuant to section 654. As so modified, we affirm the judgment.

## PROCEDURAL AND FACTUAL BACKGROUND

***Charges***

Tulare County Superior Court case No. VCF395130 arose from an incident occurring on December 5, 2019. Appellant was charged by information with inflicting corporal injury on a cohabitant (§ 273.5, subd. (a); count 1), with a special allegation that he personally inflicted great bodily injury (§ 12022.7, subd. (e)), and misdemeanor false imprisonment by violence (§ 236; count 2).

Appellant was charged by information in consolidated case No. VCF409552 of crimes occurring on two occasions, March 2, 2021, and November 2, 2019. As to the March 2, 2021 incident, he was charged with assault with a firearm (§ 245, subd. (a)(2); count 1), two counts of unlawfully possessing a firearm as a felon (§ 29800, subd. (a)(1); counts 2 [to wit, a short-barreled shotgun] & 3 [to wit, a black handgun]), unlawfully

---

[1]     All further undesignated statutory references are to the Penal Code.

possessing ammunition as a felon (§ 30305, subd. (a)(1); count 4), possession of a short-barreled shotgun (§ 33215; count 5), unlawfully carrying a loaded firearm in public (§ 25850, subd. (a); count 6), and misdemeanor exhibiting a concealable firearm in public (§ 417, subd. (a)(2)(A); count 9). As to the November 2, 2019 incident, he was charged with unlawfully possessing a firearm as a felon (§ 29800, subd. (a)(1); count 7) and misdemeanor making a false report of a criminal offense (§ 148.5, subd. (a); count 8). It was further alleged as to counts 1 through 6 that at the time of the offenses appellant was released from custody on bail or his own recognizance (§ 12022.1) and as to count 7 that appellant personally inflicted great bodily injury (§ 12022.7, subd. (a)). Several circumstances in aggravation were also alleged.

The facts adduced at the preliminary hearing are as follows.

### Case No. VCF395130

On December 5, 2019, police were dispatched to a residence and contacted appellant's girlfriend G.C. G.C. was "severely beaten," with several bruises and scratches on her face and a bite mark on her thigh that left a bruise. She reported appellant was the perpetrator of her injuries. She explained she and appellant had driven to his work, and she stayed in the vehicle and waited for him in the backseat. The following day, she awoke in the vehicle to appellant repeatedly striking her with two closed fists. The vehicle was in an unknown and secluded orchard. G.C. attempted to escape through a damaged window, but appellant grabbed her by the hair forcefully, dragged her back into the vehicle, and continued to assault her. G.C. estimated appellant had struck her approximately 30 times. Eventually, appellant entered the driver's seat and drove them back towards their residence. G.C. believed appellant attacked her because he found " 'stuff' " on her social media but did not elaborate further. She was transported and admitted to the hospital for her injuries.

### Case No. VCF409552—Counts 1 Through 6 and 9

On March 2, 2021, appellant approached a security guard at a bar and tried to get in with a fake identification card. The guard told him he could not enter. Appellant got upset, got into his car, and began driving recklessly around the parking lot. At one point, appellant drove by the guard's post, pulled out a silver firearm, and pointed it at the guard. The guard heard a clicking sound as if appellant was cocking the firearm. As appellant was pointing the firearm at the guard, he said, " 'You're lucky I'm in a good mood, or all of this about to happen.' " The guard was about 15 feet away from appellant and feared for his life. Law enforcement later found a loaded silver short-barreled shot gun in the passenger seat of appellant's vehicle. Another firearm, a black handgun, was located near the vehicle.[2]

### Case No. VCF409552—Counts 7 and 8

On November 2, 2019, M.C., who is G.C.'s brother, was sitting at a kitchen table with appellant, G.C., and appellant's father. Appellant was holding a handgun, and at one point it "[j]ust went off" and struck M.C.'s arm and chest. Appellant drove him to the police station, where an ambulance took M.C. to the hospital. M.C. was in the hospital for a week. Appellant's father later told law enforcement the firearm belonged to him. He explained that appellant had picked the firearm up, it went off, and both appellant and M.C. were hit. Appellant later explained M.C.'s injuries to law enforcement by saying that he, M.C., and G.C. were at a gas station sitting in a vehicle, and an adult man approached them and fired two rounds towards them and fled on foot.[3]

---

[2] As to the March 2, 2021 incident, the magistrate found there was *not* sufficient cause to support the charge of a violation of section 29800, subdivision (a)(1), as to the black handgun, but appellant was charged.

[3] As to the November 2, 2019 incident, the magistrate found there was *not* sufficient cause to support the charge of a violation of section 148.5, but he was charged. The magistrate also found there *was* sufficient cause to support a charge of violating section 246.3, subdivision (a), but this charge was not included in the information.

4.

*Plea and Sentence*

Appellant pled no contest to all charges and admitted all special allegations and circumstances in aggravation as to both cases.[4]  The parties stipulated that there was a factual basis for the plea contained in the preliminary hearing transcripts and police reports.  Before appellant entered his plea, defense counsel represented appellant was pleading "for that seven years, eight-month lid," and the record suggests, as we discuss in more detail below, that the trial court had given an indicated sentence of a seven-year eight-month lid off the record.

As to case No. VCF395130, appellant was sentenced to prison for the middle term of three years on count 1.  The trial court struck the punishment associated with the great bodily injury enhancement.  As to case No. VCF409552, appellant was sentenced to one-third the middle term of one year as to count 1, plus one-third the middle term of eight months, plus one year for the great bodily injury enhancement as to count 7.  Appellant was sentenced to concurrent time on the remaining counts, and the court struck the remaining enhancements.  Appellant's total prison term was five years, eight months.

## DISCUSSION

**I.      Section 1170, Subdivision (b)(6)(B) Lower Term Presumption**

Appellant contends the trial court erred by failing to expressly consider whether the lower term presumption set forth in section 1170, subdivision (b)(6)(B) applied.  We conclude appellant has not established error on this record and reject his claim.

Section 1170, subdivision (b) provides that the court shall impose a lower-term sentence if, as relevant here, the defendant was under 26 years of age at the time of the offense, and that youthfulness "was a contributing factor in the commission of the offense" "unless the court finds that the aggravating circumstances outweigh the

---

[4]      Appellant also pled no contest to other misdemeanor cases not subject to this appeal.

5.

mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice." (§§ 1170, subd. (b)(6)(B), 1016.7, subd. (b); *People v. Salazar* (2023) 15 Cal.5th 416, 426.)

It is uncontested that neither the parties, probation, nor the trial court raised the section 1170, subdivision (b)(6)(B) lower term presumption on the record. As a threshold matter, the parties disagree as to what showing must be made on appeal to show error. Appellant argues that under the test set forth by Division Five of the First District Court of Appeal in *People v. Fredrickson* (2023) 90 Cal.App.5th 984 (*Fredrickson*), the record must " ' "affirmatively" show' " that the court considered whether section 1170, subdivision (b)(6)(B) applied. Respondent does not discuss the *Fredrickson* decision; rather, their position is that we must presume from a silent record that the court properly exercised its discretion and that appellant bears the burden to establish either that the court was unaware of the law or abused its discretion in sentencing appellant to the middle term rather than the lower term, which he has failed to do. For the purposes of appellant's argument, we assume the *Fredrickson* test applies, and conclude his claim fails on its merits.

The *Fredrickson* court held the "proper test in reviewing a trial court's failure to expressly apply [the section 1170, subdivision (b)(6)(B)] presumption" is "the record must 'affirmatively' show compliance with a statutory sentencing mandate whenever the mandate has been 'trigger[ed]' by an 'initial showing' of the applicability of the statute." (*Fredrickson*, *supra*, 90 Cal.App.5th at p. 991.) That is, "there must be some initial showing that the defendant's youth was a contributing factor, and only then must the record affirmatively show compliance with the statute." (*Id*. at p. 992.) The court is not required to make express findings regarding the presumption when such a showing is not made. (*Id*. at p. 987.)

As to what constitutes an "initial showing," the *Fredrickson* court did not "decide the precise nature of the showing required," because it was not necessary for the

6.

resolution of that case, where the defendant conceded there was not an explicit indication that her youthfulness contributed to the commission of the offense. The *Fredrickson* court did note, however, that in other cases a "sufficient showing" was made in cases regarding analogous alternative sentencing schemes, when documentation and argument was provided regarding the application of the alternative sentencing scheme, and the court was " 'put on notice' " that it was required to consider the alternative sentencing scheme. (*Fredrickson*, *supra*, 90 Cal.App.5th at pp. 993–994.)

It is undisputed that appellant was a "youth" as contemplated by section 1170, subdivision (b)(6)(B) when he committed his offenses. Thus, the question under the *Fredrickson* test is whether there existed a sufficient "initial showing" that appellant's youthfulness was a contributing factor in his commission of the offenses, so as to put the trial court on notice that it was required to consider applying the presumptive lower term. To support his argument such a showing was made, appellant cites the following. First, he points to his aunt's letter submitted on his behalf, wherein she wrote that appellant was negatively affected by his parents' divorce, and "began his criminal behavior as a young adult; without realizing the consequences for his actions." Appellant contends this portion of the letter "made clear that appellant's youth was directly causally related to his criminal behavior: the negative effects of his parents' struggles led to both his criminality and his lack of awareness of its consequences."

Second, appellant cites the probation report, wherein appellant told the probation officer that his parents divorced when he was 14 years old and that "his charges [were] due to not having a good upbringing." On appeal, appellant argues, "while the report did not expressly link appellant's youth to the commission of the crime, its references to appellant's age, his parents' divorce, and especially to his belief that his upbringing influenced his offenses, underscored the same causal relationship between appellant's youth and his offense made clear in the aunt's letter."

We disagree with appellant's view of the record and do not find the two references cited by appellant put the trial court on notice that it needed to expressly address section 1170, subdivision (b)(6)(B) on the record. They show, at most, that appellant was negatively affected by his parents' divorce, but appellant fails to show how this equates to a showing that appellant's *youthfulness* specifically constituted a factor in the commission of the offenses. This is particularly true when viewed in the context of the facts of the offense underlying the principal term, in which he repeatedly struck his sleeping girlfriend after presumably driving her to a remote location. Neither appellant's aunt's letter nor any other evidence on the record provided context or explanation for what appeared to be the result of senseless violence, rather than youthful impulsivity or ignorance. Finally, and significantly, appellant at no point argued that the presumption in section 1170, subdivision (b)(6)(B) applied.[5]

For these reasons, we conclude appellant has not demonstrated the trial court was unaware of or did not properly consider section 1170, subdivision (b)(6) and find no error.

## II. Section 654 Prohibition on Multiple Punishment

Appellant contends the trial court erred by failing to stay punishment on counts 4, 5, and 6 pursuant to section 654 because they arose from a single possession of a firearm.

### A. *Certificate of Probable Cause*

As a threshold matter, the parties disagree about whether appellant was required to obtain a certificate of probable cause in order to raise this issue. An appeal from a

---

[5] This fact also supports respondent's position that appellant's claim was forfeited by failure to object or raise the issue below. Indeed, there is somewhat of a split of authority on whether a section 1170, subdivision (b)(6) claim is forfeited by failure to object. (See *People v. Achane* (2023) 92 Cal.App.5th 1037, 1047 [failure to raise § 1170, subd. (b)(6) forfeits issue on appeal]; *Fredrickson, supra*, 90 Cal.App.5th at p. 994, fn. 8 [failure to object should not constitute forfeiture where challenge is misapprehension of the court's statutory obligations].) We have decided to address the merits of appellant's claim without addressing whether his claim was forfeited.

judgment of conviction following a guilty or no contest plea requires a certificate of probable cause unless, as relevant here, the appeal raises sentencing issues that do not challenge the validity of the plea. (§ 1237.5, subd. (b); Cal. Rules of Court, rule 8.304(b)(2)(B).)

The parties have different interpretations of the record as to the circumstances of appellant's plea, and whether appellant was required to obtain a certificate of probable cause turns on which interpretation we credit.

Respondent contends appellant and the People entered into a negotiated plea agreement, of which the sentence lid was part of the agreed upon terms. As such, according to respondent's position, appellant can only raise challenges to the sentencing court's discretionary choices and cannot challenge the *authority* of the court to sentence appellant within that lid. (See *People v. Shelton* (2006) 37 Cal.4th 759, 769 ["Because the plea agreement was based on a mutual understanding … that the court had authority to impose the lid sentence, defendant's contention that the lid sentence violated the multiple punishment prohibition of … section 654 was in substance a challenge to the plea's validity and thus required a certificate of probable cause .…"].)

Appellant's position is that he entered into no plea agreement with the People. He maintains he entered his plea after hearing the trial court's indicated sentence and has thus preserved his ability to make a section 654 challenge without it constituting a challenge to the validity of the plea.

We agree with appellant.

Plea bargaining "contemplates an agreement negotiated by the People and the defendant and approved by the court," whereby "the defendant agrees to plead guilty in order to obtain a reciprocal benefit, generally consisting of a less severe punishment than that which could result if he were convicted of all offenses charged." (*People v. Clancey* (2013) 56 Cal.4th 562, 569–570.) "On the other hand, '[w]here the defendant pleads "guilty to all charges … so all that remains is the pronouncement of judgment and

9.

sentencing" [citation], "there is no requirement that the People consent to a guilty plea" [citation]. In that circumstance, the court may indicate "what sentence [it] will impose if a given set of facts is confirmed, irrespective of whether guilt is adjudicated at trial or admitted by plea." [Citation.]' " (*Id*. at p. 570.)

We note it appears much of the discussion revolving around resolution of the underlying case happened off the record, and the record before us leaves some to be desired. Our Supreme Court has held the terms of a plea agreement must become part of the record of the court. (*People v. West* (1970) 3 Cal.3d 595, 610.) It has also advised that a court that is giving an "indicated sentence," "should not only identify it as such, but should also ensure that the record makes clear the indicated sentence represents the court's best judgment as to the appropriate punishment for this defendant and this offense, regardless of whether guilt is established by plea or at trial." (*People v. Clancey*, *supra*, 56 Cal.4th at p. 576.) Here, the record neither clearly sets forth the terms of any plea agreement, nor does it clearly indicate that the sentence lid was an "indicated sentence" as described by *Clancey*.

In reviewing the totality of the circumstances, however, it appears the seven-year eight-month lid was simply an indicated sentence by the trial court, rather than an agreement consented to by the People. First, no plea agreement terms were clearly set forth on the record as required by *West*. In applying the presumption that the trial court followed the law (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 398), we presume the court would have made a clearer record if there was a plea agreement between the parties. Here, the prosecutor made no indication it had offered or agreed to a seven-year eight-month sentence lid, and did not move to dismiss any counts or enhancements. Appellant pled to all charged substantive counts and enhancements and was advised at the time of his plea, that "[t]he maximum punishment you could receive here" was "in the neighborhood of 15 years plus a $10,000 fine," plus "some extra time" on the misdemeanor charges. Appellant also confirmed no one had "promised [him]

10.

anything other than what we have talked about here in open court to get [him] to change [his] plea."

The references to the off-the-record discussions by the parties also suggest no agreement was reached. In arguing for the trial court to impose a seven-year eight-month sentence, the prosecutor stated, in reference to those discussions, the "*lowest offer that I could come to* was seven years, eight months. Which is why we came to that seven year, eight months lid." (Italics added.) During a subsequent closed hearing, the court stated, in reference to the discussions, that the prosecutor was "not in agreement with *anything less than seven years and eight months*. I think my position was that I would make that seven years, eight months, a lid." (Italics added.) We take these statements at face value—that the People did not agree to any sentence less than seven years, eight months, and thus it stands to reason that they did not agree to a seven-year eight-month "lid."

Finally, the minute order,[6] probation report, and the trial court itself all referred to the seven-year eight-month lid as an "indicated" sentence, and there is no reference in the documents to a plea agreement between the parties.[7]

Because appellant's sentence lid was not negotiated as part of a plea agreement, we therefore conclude appellant did not concede to the legality of or authority for the trial

---

[6] The minute order form includes a box to be checked which states, "Counsel stipulate to indicated sentence," and this box was unchecked as to both cases.

[7] We acknowledge appellant refers to an "agreement" or "plea deal" on the record in relation with his claim that he understood he would get probation if he pled to the charges. The trial court conducted a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118, in response to his assertions. After hearing from the parties, the court denied the motion, stating it did not find appellant's assertion he was promised probation credible. As we have explained in the body of the opinion, there is little other evidence that the seven-year eight-month sentence lid was part of a negotiated plea agreement between the parties. We do not find appellant's reference to an "agreement" or "plea deal" dispositive for the purpose of our analysis, particularly considering that it was made in conjunction with a factual claim that the court did not find credible.

11.

court to impose any particular sentence or length of sentence in exchange for any reduction in the maximum potential exposure by entering his plea. By arguing the court erred by imposing concurrent sentences on counts 4, 5, and 6, instead of staying punishment pursuant to section 654, he is merely raising a sentencing issue, not an issue that goes to the validity of the plea. Therefore, we conclude a certificate of probable cause was not required.[8]

### B. *Analysis*

Section 654, subdivision (a) reads in relevant part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." This has been interpreted to mean that the statute "generally precludes multiple punishments for a single physical act that violates different provisions of law [citation] as well as multiple punishments for an indivisible course of conduct that violates more than one criminal statute." (*People v. Newman* (2015) 238 Cal.App.4th 103, 111–112, italics omitted.) We review a trial court's determination of whether section 654 applies for substantial evidence. (*People v. Jackson* (2016) 1 Cal.5th 269, 354.)

"[A] single possession or carrying of a single firearm on a single occasion may be punished only once under section 654." (*People v. Jones* (2012) 54 Cal.4th 350, 357.) Here, respondent does not address the merits of appellant's section 654 claim. It appears to be undisputed that the charges related to appellant's possession of the silver

---

[8] In any event, even if the People had entered into a plea agreement that did not contemplate appellant's ability to make a section 654 challenge, appellant's challenge here does not affect their benefit of the bargain, as the trial court ran the sentence on counts 4, 5, and 6 concurrently. Correcting the sentence would not affect appellant's total prison time.

short-barreled shotgun on March 2, 2021 (counts 2, 4, 5, & 6) arise from a single act. Therefore, section 654 prohibits multiple punishment on counts 4, 5, and 6.

Accordingly, we modify the judgment to stay punishment on counts 4, 5, and 6.[9]

## DISPOSITION

We modify the judgment to reflect that punishment is stayed on counts 4, 5, and 6 pursuant to section 654. The superior court is directed to cause an amended abstract of judgment to be prepared and forwarded to the proper authorities. As so modified, the judgment is affirmed.

---

[9] Remand is not necessary because punishment is the same for all relevant counts, and a remand would not change appellant's sentence. (*People v. Bey* (2025) 108 Cal.App.5th 144, 167–168.)